IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KATHY JEAN CAIN,

        Appellant,

v.                                        Case No. 5:06-CV-182 MCR/EMT

CADLE COMPANY,

        Appellee.
_____/

## OPINION

      Kathy Jean Cain ("Cain"), appellant/debtor, appeals from the bankruptcy court's order granting Cadle Company ("Cadle"), appellee/creditor, relief from the co-debtor stay afforded by 11 U.S.C. § 1301(a). (Doc. 1-31). Both parties have filed appellate briefs and were heard at oral argument. For the following reasons, the court affirms.

**Background**

      Cain and her husband co-signed a promissory note payable to Cadle and secured by a second mortgage on their home. The holder of the first mortgage subsequently foreclosed on the home, but the foreclosure sale was insufficient to satisfy the Cains' second mortgage with Cadle.[1] Cain filed for bankruptcy relief under Chapter 13. Cain's voluntary petition listed Cadle as an unsecured creditor and noted that the amount of the claim ($38,517.39) was disputed. (Doc. 1-4 at 13). Cain's Chapter 13 plan proposed to pay 100% of creditors' allowed, unsecured claims.[2] Cadle filed an unsecured proof of

---

[1] Cain disputes this fact and asserts that the foreclosure sale satisfied both mortgages. The validity of this fact is not relevant on appeal.

[2] Cain later filed an amended Chapter 13 plan, which also proposed to pay 100% of creditors' allowed, unsecured claims. The amended plan again listed Cadle's claim as being $38,517.39. Unlike Cain's original plan, her amended plan also proposed to pay six percent interest on creditors' claims if funds were available.

claim in the amount of $87,161.95, which represented the sum of the principle balance remaining on the mortgage ($38,517.39) plus interest, penalties, late fees, and legal expenses ($44,644.56). Cain filed an objection to the claim and, after Cadle failed to respond to the objection, the bankruptcy court sustained the objection and limited the amount of the claim to $38,517.39.[3] The court subsequently confirmed Cain's Chapter 13 plan. Cadle filed a motion asking the bankruptcy court to reconsider its order sustaining Cain's objection to Cadle's claim. The bankruptcy court denied the motion. Cadle then filed a motion to lift the co-debtor stay so that it could pursue the balance of its claim ($44,644.56) against Cain's husband. The bankruptcy court granted Cadle's motion. This appeal followed.

**Jurisdiction and Standard of Review**

The court has appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(1). The parties in this case do not dispute the facts relevant to this appeal, but rather the proper interpretation of the Bankruptcy Code by the bankruptcy court. "The proper construction of the Bankruptcy Code, whether by the bankruptcy court or the district court, is a matter of law, subject to de novo review." Southeastern Bank v. Brown, 266 B.R. 900, 903 (S.D.Ga. 2001) (quoting Meehan v. Wallace (In re Meehan), 102 F.3d 1209, 1210 (11th Cir. 1997)). "De novo review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions." In re Piper Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2001) (citing Moody v. Amoco Oil Co., 734 F.2d 1200, 1210 (7th Cir. 1984)).

**Discussion**

The filing of a Chapter 13 petition operates to automatically stay certain

---

[3] Cain's objection stated that "[a]n order sustaining said objection(s) may be entered by the court at the expiration of 23 days from the date of this notice unless said creditor(s) file a response and request for a hearing with the court within that time." (Doc. 1-14). Further, Local Bankruptcy Rule 3007-1(C) provides that "[i]f no response to an objection to a claim is filed pursuant to Local Rule 9013-2, the Court may grant relief to the objecting party without necessity of an evidentiary hearing if relief is otherwise proper." N.D.Fla. LBR 3007-1. Local Bankruptcy Rule 9013-2 further states that "[f]ailure to file a response and such memorandum may be sufficient cause for the granting of the motion by default." N.D.Fla. LBR 9013-2.

Case No. 5:06cv182/MCR/EMT

proceedings against the debtor and any co-debtors.  11 U.S.C. § 362(a) (debtors); 11 U.S.C. § 1301(a) (co-debtors).  Section 1301(a) provides that "after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor."  Id.  This "co-debtor stay" does not apply if the co-debtor became "liable on or secured such debt in the ordinary course of business" or if the debtor's "case is closed, dismissed, or converted to a case under Chapter 7 or 11."  11 U.S.C. § 1301(a)(1) and (2).  Further, a court *must* grant relief from the co-debtor stay "on request of a party in interest and after notice and a hearing . . . to the extent that . . . the plan filed by the debtor proposes not to pay such claim . . . ."  11 U.S.C. § 1301(c)(2) (emphasis added).[4]

In its order granting Cadle relief from the co-debtor stay the bankruptcy court determined that the term "claim" in § 1301(c)(2) referred to the full amount of the creditor's proof of claim, not merely the amount allowed by the bankruptcy court.  (Doc. 1-31 at 2).  The court thus reasoned that because Cain's plan did not propose to pay the full amount listed in Cadle's proof of claim the co-debtor stay should be lifted as to the balance of Cadle's claim.[5]  Id. at 4.  On appeal, Cain maintains that the bankruptcy court erred in its determination that the term "claim" in § 1301(c)(2) refers to the full amount of the creditor's proof of claim rather than the amount allowed by the bankruptcy court.[6]  Cain argues the

---

[4] Section 1301(c) also directs that courts shall grant relief from the co-debtor stay to the extent that "as between the debtor and the individual protected [by the stay], such individual received the consideration for the claim held by such creditor" or if "such creditor's interest would be irreparably harmed by continuation of such stay."  11 U.S.C. § 1301(c).  Neither of these exceptions is relevant here.

[5] The bankruptcy court further reasoned that because Cain was no longer liable with her husband on the balance of Cadle's claim no co-debtor stay existed as to this amount, as the stay only covers debts on which the co-debtor is liable with the debtor. (Doc. 1-31 at 2).  Based on this court's conclusion that the bankruptcy court was correct in its interpretation of the term "claim" in § 1301(c)(2), see infra, the court need not address this second basis for the bankruptcy court's decision.

[6] Cain also argues on appeal that the doctrines of issue and claim preclusion prevent Cadle from relitigating an issue that has already been or could have been decided by the bankruptcy court.  She argues that pursuant to these doctrines, Cadle cannot seek relief from the co-debtor stay on an amount greater than that included in Cain's confirmed plan because the amount of Cadle's claim was determined when her Chapter 13 plan was confirmed.  The court disagrees.  The court finds that Cadle was not barred by the

term "claim" in § 1301(c)(2) refers to the amount of the claim allowed by the bankruptcy court and thus the bankruptcy court's order lifting the co-debtor stay was in error because Cain's plan proposed to pay the entire amount of Cadle's claim *as allowed by the bankruptcy court*.

**Relief from the Co-Debtor Stay under 11 U.S.C. § 1301(c)(2)**

Relief from the co-debtor stay must be granted to the extent "the plan filed by the debtor proposes not to pay such claim." 11 U.S.C. § 1301(c)(2). The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A) (emphasis added).[7] Claims by creditors are established by the filing of a proof of claim pursuant to 11 U.S.C. § 501. A claim for which proof has been filed is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party objects to a claim, the bankruptcy court "shall determine the amount of such claim in lawful currency of the United States as of the

---

doctrines of issue or claim preclusion from seeking relief from the co-debtor stay for the amount of its claim not provided for in Cain's plan. It is true that the confirmation of Cain's plan served to limit her liability on Cadle's claim so long as she abided by her Chapter 13 plan. See 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."). It is also true that after confirmation Cadle could no longer challenge the amount Cain was required to pay to discharge her debt. In re Bateman, 331 F.3d at 824; see also In re Lackey, 148 B.R. 636, 628 (Bankr.N.D.Ala. 1992) (internal quotation marks omitted) (quoting Anaheim Sav. & Loan Ass'n v. Evans (In re Evans), 30 B.R. 530, 531 (9th Cir. BAP 1983)) ("An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing."). The confirmation of Cain's plan, however, did not determine the co-debtor's liability for the balance of the debt, and a discharge of Cain's debt will not extinguish any liability the co-debtor may have for this amount. See 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on . . . such debt."); see also In re Craig, 325 B.R. 804, 806 (Bankr.N.D.Iowa 2005) (citing In re Lembke, 93 B.R. 701, 702 (Bankr.D.N.D. 1988)) ("[A] discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability . . . . The debt still exists, however, and can be collected from any other entity that might be liable."). Cadle, therefore, is not precluded from pursuing the balance of its claim from the co-debtor based on issue or claim preclusion because no determination has been made as to the co-debtor's liability for the balance of Cadle's claim. The bankruptcy court made clear in its order that it was not making any finding regarding the co-debtor's liability on any part of Cadle's claim.

[7] Section 101(5) further states that the term "claim" also includes a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B).

date of the filing of the petition, and shall allow such claim in that amount" barring certain exceptions. 11 U.S.C. § 502(b).

In this case, Cadle filed a proof of claim for $87,161.95 (the "full claim"). Cain then filed an objection to the claim, to which Cadle failed to respond. Pursuant to § 502(b), the bankruptcy court determined that Cadle's claim would be allowed in the amount of $38,517.39 (the "allowed claim"), which represented the principle remaining on Cain's debt and the amount Cain had proposed to pay under her plan. The disputed issue before the court, therefore, is whether the term "claim" in § 1301(c)(2) refers to the full amount of Cadle's proof of claim or only the amount allowed by the bankruptcy court. If "claim" refers to the former, then the co-debtor stay was appropriately lifted because Cain's plan did not propose to pay Cadle's full proof of claim. If "claim", however, refers to the amount allowed by the bankruptcy court, then the co-debtor stay should not have been lifted because Cain's plan proposed to pay all of Cadle's allowed claim.

Having carefully reviewed the Bankruptcy Code and pertinent case law on this issue, this court concludes that the bankruptcy court's interpretation of the term "claim" in § 1301(c)(2) as referring to the creditor's entire proof of claim, not merely the amount allowed by the bankruptcy court was correct. The Bankruptcy Code's definition of "claim" found in 11 U.S.C. § 101(5) is broad and explicitly includes disputed rights to payment.[8] The definitions in § 101, including the definition of "claim", apply wherever the pertinent term appears in the Bankruptcy Code. 11 U.S.C. § 101. Thus, wherever the term "claim" is used in the Bankruptcy Code, Section 101's broad definition of the term applies, unless the particular section indicates otherwise. Brown, 266 B.R. at 905. Section 1301(c)(2) does not contain a more narrow definition of "claim", and thus the term "claim" as used in that section should be interpreted consistent with the broad definition of claim in § 101(5). Id. Further, "[w]hen § 1301(c)(2) authorizes a lift of the stay to the extent the plan does not propose to pay 'such claim,' the words 'such claim' reference the phrase 'all or any part of a consumer debt of the debtor' [in § 1301(a)]." Id. Therefore, for the purpose of deciding

---

[8] See supra p. 4 (reciting 11 U.S.C. § 101(5)'s definition of the term "claim").

whether the co-debtor stay should be lifted under § 1301(c)(2), Cadle's "claim" encompasses all of the consumer debt Cadle asserts it is owed, including its claim for interest, late fees, and attorney's fees. See id. Finally, "if Congress had meant for 'claim' [in § 1301(c)(2)] to actually mean 'allowed claim,' it could have explicitly said so as it did elsewhere in the Code." Id. at 906 (citing 11 U.S.C. § 726(a) as an example); see also In re Butler, 242 B.R. 553, 556 n. 1 (Bankr. S.D.Ga. 1999).

The bankruptcy court's interpretation is further supported by the statute's plain language. Section 1301(c)(2) provides that the co-debtor stay is to be lifted to the extent the "plan filed by the debtor proposes not to pay such claim." 11 U.S.C. § 1301(c)(2). Based on this language, a creditor can seek relief from the co-debtor stay once the debtor files a plan that proposes to pay less than 100% of listed creditors' claims or once the creditor files a proof of claim indicating that the debtor has a consumer debt greater than that proposed in the debtor's plan. Nothing in the statute suggests that a creditor must wait to seek relief from the co-debtor stay until the bankruptcy court determines the amount of the allowed claim pursuant to § 502(b) or until the plan is confirmed. Because relief from the co-debtor stay under § 1301(c)(2) is not dependent on a determination of the allowed claim, the court concludes that the term "claim" refers not to the allowed claim, but instead to the full claim. See Brown, 266 B.R. at 905 (citing In re Jacobsen, 20 B.R. 648, 650 (9th Cir. BAP 1982)).

This interpretation also finds support in the legislative history of § 1301. See In re Butler, 242 B.R. at 557. In creating the co-debtor stay, Congress had two primary objectives.[9] Int'l Harvester Employee Credit Union, Inc. v. Daniel, 13 B.R. 555, 557-58 (Bankr.S.D.Ohio 1981). First, the stay was intended to "relieve the debtor from indirect pressure to pay certain creditors in full immediately, in spite of the pendency and the supposed protection of the Chapter 13 case." Brown, 266 B.R. at 907 (citing H.R.Rep. No. 95-595, at 122 (1977), U.S.Code Cong. & Admin.News 1978, at 6083). Second, the stay

---

[9] The court references the legislative history because it supports the court's plain meaning construction of the statute.

Case No. 5:06cv182/MCR/EMT

was designed to "assure creditors that they would receive the benefit of their bargains with co[-]debtors and would not be substantially prejudiced by the co[-]debtor stay." Int'l Harvester, 13 B.R. at 558. The "creditor should recover full compensation including any interest, fees, and costs provided for by the agreement under which the debtor obtained his loan." In re Butler, 242 B.R. at 557 (internal quotation marks omitted) (quoting H.R.Rep. No. 95-595, at 426 (1977), reprinted in 1978 U.S.C.C.A.N. 6381). The co-debtor stay was not intended to affect a creditor's substantive rights; the stay only requires a creditor to wait to receive payment of its claim, along with other creditors, on that amount of its claim paid under the debtor's plan. Id. (quoting H.R.Rep. No. 95-595, at 122 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6083)). Finally, the stay was not intended to protect co-debtors not in bankruptcy; any protection co-debtors receive as a result of the stay is incidental to the statute's intended protection of debtors. Brown, 266 B.R. at 908.

The bankruptcy court's interpretation of § 1301(c)(2) is consistent with these congressional objectives. First, the bankruptcy court's interpretation provides debtors with the "opportunity to protect their cosigners from liability." Brown, 266 B.R. at 907. Debtors can fully protect co-debtors from civil action by paying the entire amount listed on a creditor's proof of claim. See id. ("While [paying debts through the plan], debtors . . . know that even if their creditors are not receiving their money as quickly as the creditors would like, the creditors are nevertheless prevented from going after the cosigners instead, at least as long as the debtors are paying the full debt."). If a debtor objects to or otherwise disputes the claim or proposes not to pay the full claim, however, he opens the door for the creditor to seek any part of its claim not paid under the debtor's plan from the co-debtor.[10] The debtor cannot, as Cain attempts here, simultaneously limit his own liability

---

[10] While Cain argues that Cadle's failure to respond to Cain's objection should bar Cadle from seeking relief from the co-debtor stay, it was actually Cain's decision seeking to limit her liability by objecting to Cadle's proof of claim that potentially opened the door for Cadle to seek the balance of its claim from the co-debtor. In fact, if Cadle had responded to Cain's objection and the bankruptcy court had nevertheless sustained Cain's objection, Cain's plan still would not propose to pay Cadle's full claim and Cadle would be able to seek relief from the co-debtor stay. Cadle's failure to respond thus is irrelevant to the issue on appeal. The only relevant issue is whether Cain's plan proposed to pay Cadle's full proof of claim. The court finds it did not. The cases on which Cain relies in support of her argument, In re Francis, 15 B.R. 998

on the debt while also extending the protections of the co-debtor stay to the full amount of the creditor's proof of claim.[11] Simply put, the debtor cannot have it both ways.

The bankruptcy court's interpretation of § 1301(c)(2) is also consistent with Congress' objectives because it ensures that "creditors who have protected themselves from this very problem still get their money." Brown, 266 B.R. at 908 (citing In re Harris, 16 B.R. 371, 376 (Bankr.E.D.Tenn. 1982)). Under the bankruptcy court's interpretation of § 1301(c)(2) a creditor holding a co-signed debt must wait with other creditors for the part of its claim paid under the debtor's plan. Congress, however, only intended the stay to force creditors "to wait for funds that are actually being paid through the plan." Id. at 906. Requiring the creditor to wait until dismissal of the bankruptcy case to pursue its right to payment from a co-debtor "when all parties know that the creditor[ ] will never receive full payment through the plan, makes little sense." Id. at 908 (citing In re Jacobsen, 20 B.R. at 650).

Because Cain's plan did not propose to pay the full amount of Cadle's proof of claim, relief from the co-debtor stay was mandatory under § 1301(c)(2).[12] See In re

---

(Bankr.E.D.N.Y 1981) and In re Humphrey, 310 B.R. 735 (Bankr.W.D.Mo. 2004), are inapplicable because in both of those cases the court denied relief from the co-debtor stay because the creditor had failed to file a timely proof of claim, which is entirely different from failing to respond to a debtor's objection. An unsecured creditor must file a proof of claim in order for its claim to be allowed. In re Bateman, 331 F.3d 821, 827 (11th Cir. 2003) (citing Fed. R. Bankr.P. 3002(a)). In this case, Cadle filed a timely proof of claim and also a timely objection to the confirmation of the plan based on its proof of claim. Thus, unlike the creditors in Francis and Humphrey, Cadle protected its interest by filing a proof of claim and its failure to respond to Cain's objection does not bar it from obtaining relief from the co-debtor stay. See In re Francis, 15 B.R. at 1003 ("Had plaintiff filed a proof of claim pursuant to 11 U.S.C. § 501(a), its rights would be protected.")

[11]   At oral argument, Cain argued that lifting the co-debtor stay on the balance of the debt could result in the type of undue pressure Congress sought to prevent in creating the co-debtor stay because debtors would face pressure to pay off the balance of these co-signed debts even though their liability is limited under their plan. The potential for such pressure, however, would exist any time the co-debtor stay was lifted under § 1301(c)(2).

[12]   The court recognizes that this interpretation of the term "claim" in § 1301(c)(2) is not universally accepted. See In re Deen, 260 B.R. 577 (Bankr.S.D.Ga. 2000); In re Alls, 238 B.R. 914 (Bankr.S.D.Ga. 1999). As the court in Brown recognized, however, the interpretation of § 1301 found in these cases is not supported by the plain language of the statute and is "wholly contrary" to the statute's legislative history. See Brown, 266 B.R. at 905, 907. This court agrees.

Case No. 5:06cv182/MCR/EMT

Schaffrath, 214 B.R. 153, 155 (6th Cir. BAP 1997).  The bankruptcy court's decision to lift the co-debtor stay as to the balance of Cadle's proof of claim pursuant to § 1301(c)(2) therefore is affirmed.

    **DONE and ORDERED** on this 30th day of September, 2007.


                                            s/ *M. Casey Rodgers*
                                            M. CASEY RODGERS
                                            UNITED STATES DISTRICT JUDGE